# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Nationstar Mortgage LLC,

    Plaintiff

v.

The Springs at Spanish Trail Association, et al.,

    Defendants

ALL OTHER PARTIES AND CLAIMS

Case No. 2:15-cv-01217-JAD-GWF

**Order Granting Summary Judgment**

[ECF Nos. 71, 72]

    Nationstar Mortgage LLC brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a home on which it claims a deed of trust.[1] Nationstar sues the Springs at Spanish Trail Association (the HOA), which conducted the foreclosure sale, and foreclosure-sale purchaser Saticoy Bay, LLC Series 6974 Emerald Springs, seeking a declaration that the sale was invalid or that Saticoy Bay purchased the property subject to Nationstar's security interest. Nationstar and Saticoy Bay crossmove for summary judgment. Because Nationstar has demonstrated that its predecessor-in-interest validly tendered the superpriority portion of the HOA lien but the HOA foreclosed anyway, I grant summary judgment in Nationstar's favor and close this case.

---

[1] ECF No. 1.

**Statement of Facts**

Gary Hosman purchased the home located at 6974 Emerald Springs Lane in Las Vegas, Nevada in 2005 with a $230,000 loan from Countrywide Home Loans, secured by a deed of trust.[2] After a series of assignments, Nationstar now holds that deed of trust.[3] The home is located in the Springs at Spanish Trail common-interest community and subject to the declaration of covenants, conditions, and restrictions for its homeowners' association.[4] The Nevada Legislature gave HOAs a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[5] When the assessments on this home became delinquent, the HOA commenced non-judicial foreclosure proceedings on it under Chapter 116 in 2011.[6]

When Countrywide learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP,[7] sent a letter to the HOA stating that the trustee "hereby offers to pay" the nine months of assessments for common expenses incurred before the date of [the HOA's] notice of delinquent assessment dated February 23, 2011," and asking the HOA to "refrain from taking further action to enforce this HOA lien until" the parties could

---

[2] ECF No. 71-1 at 2 (deed of trust).

[3] ECF No. 71-2 at 2 (Countrywide to HSBC assignment); 71-3 (HSBC to Nationstar assignment).

[4] ECF No. 71-1 at 23 (PUD rider); 71-11 (HOA's Declaration of Restrictions).

[5] Nev. Rev. Stat. § 116.3116; *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014).

[6] ECF Nos. 71-4, 71-6 (notices of lien for delinquent assessments); 71-5 (notice of default and election to sell); and 71-8 (notice of foreclosure sale).

[7] The letter reflects that Miles Bauer was acting for MERS as nominee for BAC Home Loans Servicing, LP afka Countrywide Home Loans, Inc., ECF No. 71-7 at 6, so for ease of reference I refer to the Miles Bauer client as Countrywide or the lender.

"speak to attempt to fully resolve all issues."[8] The HOA's agent Red Rock Financial Services responded with an "accounting ledger" reflecting a total amount due of $5,247.76.[9] That amount consisted of unpaid common assessments, late fees, and lien-related charges. The ledger reflects no maintenance or nuisance-abatement charges.[10]

Miles Bauer then sent another letter disputing the payoff amount as "includ[ing] many fees that are junior to" the "first deed of trust pursuant to . . . NRS 116.3102 Subsection (1), Paragraphs (j) through (n)."[11] The letter explained that Miles Bauer was including a check to pay off the superpriority amount of the lien:

> Our client has authorized us to make payment to you in the amount of $2,475.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to Red Rock Financial Services in the sum $2,475.00, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA.[12]

It further stated that "This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the lender's] financial obligations towards the HOA in regards to the real property . . . have now been 'paid in

---

[8] ECF No. 71-7 at 7.

[9] *Id.* at 9.

[10] *Id.* Under the version of NRS 116.3116 in effect at the time of this foreclosure, "the superpriority piece" consisted only "of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges." *SFR*, 334 P.3d at 411.

[11] *Id.* at 16.

[12] *Id.*

3

full.'"[13] The HOA rejected the $2,475.00 tender and foreclosed on the property more than two years later.[14] Saticoy Bay was the winning bidder at $20,100.[15]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[16] Nationstar brings this action to save its deed of trust from extinguishment. It pleads four claims: quiet title, breach of NRS 116.3116, wrongful foreclosure, and injunctive relief.[17] Saticoy Bay counterclaims for quiet title.[18] The parties' quiet-title claims are the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[19] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to

---

[13] *Id.*

[14] ECF No. 71-9 at 2 (foreclosure deed recorded on 9/3/13); ECF No. 77-1 at 33 (Koerner deposition).

[15] *Id.*

[16] *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d at 419.

[17] ECF No. 1.

[18] ECF No. 11 (Saticoy Bay's counterclaim). Nationstar's NRS 116.3116 and wrongful-foreclosure claims are pled in the alternative and seek relief only conditionally— "[i]f it is determined" that the sale "extinguished the senior deed of trust." ECF No. 1 at ¶¶ 63, 72. And "injunctive relief" is a remedy, not an independent cause of action. Because I find that the foreclosure sale did not extinguish Nationstar's deed of trust, the condition precedent to Nationstar's alternative claims is not met. So I dismiss those claims as moot.

[19] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[20]

Discovery has long-since closed,[21] and Nationstar and Saticoy Bay crossmove for summary judgment on their quiet-title claims.[22] Nationstar primarily argues that its predecessor's tender of the full superpriority lien amount makes this case procedurally identical to *Bank of America v. SFR Investments Pool 1, LLC* ("*Diamond Spur*"), in which the Nevada Supreme Court held that "after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale on the entire lien is void as to the superpriority portion," so the foreclosure-sale purchaser takes the property subject to the deed of trust.[23] Saticoy Bay argues that *Diamond Spur* was wrongly decided or is inapposite, that there is inadequate proof of a valid tender, and that its status as an innocent, bona fide purchaser should prevail over all other arguments.[24] I find that Nationstar has established that its predecessor validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the superpriority portion and causing the deed of trust to survive the foreclosure sale. So I grant Nationstar's motion on this tender issue, enter summary judgment in Nationstar's favor and declare that Saticoy Bay took the property subject to Nationstar's deed of trust, and do not reach the parties' remaining arguments.

---

[20] *Id.* at 1112.

[21] ECF No. 17.

[22] ECF Nos. 71 (Nationstar); 72 (Saticoy Bay).

[23] *Bank of America v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018) (en banc).

[24] ECF Nos. 72, 75.

**Discussion**

**A.     Standards for cross motions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[25] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[26] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[27]

Who bears the burden of proof on the factual issue in question is critical. When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[28] Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[29] When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual

---

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[26] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[27] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[28] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[29] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

issue.[30]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[31]

**B. The tender of the superpriority amount cured the default, so Saticoy Bay took the property subject to the deed of trust.**

Nationstar argues that Miles Bauer's tender of $2,475.00, which consists of nine months of $275 monthly assessments, operated to discharge the HOA's superpriority lien and should have prevented the HOA from foreclosing on that lien.  It relies on *Diamond Spur*, in which the Nevada Supreme Court, sitting en banc, held that a nearly identical "tender cured the default as to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien resulted in a void sale as to the superpriority portion.  Accordingly, the HOA could not convey full title to the property, as [the] first deed of trust remained after foreclosure . . . [and the foreclosure-buyer] purchased the property subject to [the] deed of trust."[32]  In *Diamond Spur*, just as here, the lender's counsel, Miles Bauer contacted the HOA to get clarification on the superpriority amount due.  Based on the information received from the HOA, Miles Bauer tendered nine months' worth of assessments to the HOA with a letter nearly identical to the one here.[33]  And just as in this case, the HOA rejected the payment and sold the property at foreclosure.[34]

---

[30] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[31] *Celotex*, 477 U.S. at 322.

[32] *Bank of America v. SFR Investments Pool 1, LLC*, 427 P.3d 113, 121 (Nev. Sept. 13, 2018).

[33] *Id*. at 116.

[34] *Id*. at 116–17.

7

The Nevada Supreme Court explained that "[a] valid tender of payment operates to discharge a lien or cure a default."[35] Although a valid tender requires payment in full, for purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from extinguishment under the version of the foreclosure statute in effect in 2013, the bank needed to pay only "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[36] Because the bank properly calculated nine months' worth of assessments based on the HOA's information, "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the Court found that, "[o]n the record presented, this was the full superpriority amount."[37] And although tenders "must be unconditional, or with conditions on which the tendering party has a right to insist," the Nevada Supreme Court found that the bank's tender conditions—which were materially identical[38] to those imposed here— were permissible.[39]

### 1. The tender was not impermissibly conditional.

Saticoy Bay argues that this tender was ineffective to discharge the superpriority portion of the HOA lien because it was conditional: the letter that accompanied the check required "the Association [to] categorically waive super-priority treatment for nuisance and abatement charges

---

[35] *Id*. at 117.

[36] *Id*. (citing 116.3116(2) and *SFR*, 334 P.3d at 412).

[37] *Id.* at 118.

[38] *Compare id*. at 118 *with* ECF No. 71-7 at 16.

[39] The Nevada Supreme Court reaffirmed these principles and the effect of the tender procedures employed here in *Bank of America v. Thomas Jessup, LLC Series VII*, 435 P.3d 1217, 1220 (Nev. March 7, 2019), when it found that a similar Miles Bauer letter, offering to pay the superpriority portion of the lien, "combined with [the HOA's] rejection of that offer, operated to cure the default as to that portion of the lien such that the ensuring foreclosure sale did not extinguish the first deed of trust."

8

as an express condition to receiving the payment . . . ."[40] But the letter contains no such condition.[41] Regardless, any such condition would have been meaningless because the accounting that the HOA sent to Miles Bauer for this property had no maintenance or nuisance-abatement charges on it.[42] So, the only charges relevant to the superpriority lien calculation for this property were the assessments for common expenses that became due during the nine months before the lien-enforcement action commenced. Here, those assessments were $275 per month, and $275 x 9 months = $2,475.00, exactly the amount of Miles Bauer's tender. Acceptance of this tender, therefore, would not have resulted in the HOA's waiver of any superpriority lien rights.

Plus, the condition in this letter was the very same one found by the Nevada Supreme Court in *Diamond Spur* to be permissible. The letter here stated that endorsement of the check would be "strictly construed as an unconditional acceptance . . . and express agreement that [the lender's] financial obligations towards the HOA in regards to the real property . . . have now been 'paid in full.'"[43] This is the verbatim language[44] that the Nevada Supreme Court greenlighted in *Diamond Spur* because the lender "had a legal right to insist on this" condition.[45] Because the Miles Bauer letter that accompanied the check here contained the same condition

---

[40] ECF No. 75 at 12–13.
[41] *See* ECF No. 71-7 at 16.
[42] *Id*. at 10–12.
[43] *Id*. at 16.
[44] *Compare* ECF No. 71-7 at 16 *with Diamond Spur*, 427 P.3d at 118.
[45] *Diamond Spur*, 427 P.3d at 118.

that the Nevada Supreme Court found permissible in *Diamond Spur*, Miles Bauer's "tender of the superpriority portion of the lien" here "did not carry an improper condition."[46]

### 2. There is no genuine dispute that the check was supported by sufficient funds.

Saticoy Bay next argues that the check was an invalid means of tender because it was a law-firm-trust-account check, not a cashier's check, and Nationstar "has not proven that there were sufficient funds in the trust account to cover the check."[47] For this rule, Saticoy Bay relies on a 1987 decision from the Nebraska Supreme Court.[48] But that case is materially distinguishable because the check in that case was merely suggested but never written, and the payor admitted he lacked the funds to foot the full bill so, had he written the check, it would have been "hot."[49] The record here contains no evidence that the check Miles Bauer mailed to Red Rock Financial Services was similarly "hot"; the check was actually cut, received by Red Rock, and returned; and the letter that accompanied the check indicated that it was being sent as payment.[50] Because Saticoy Bay offers no evidence that the check was not what it was represented to be—actual payment of $2,475.00—there is no genuine dispute that the check was supported by sufficient funds.

### 3. The court may consider Nationstar's tender evidence.

Saticoy Bay also challenges Nationstar's evidence of tender, arguing that "evidence in support of a motion for summary judgment must be admissible," and this evidence isn't because the affiant authenticating the Miles Bauer records was not disclosed as a witness in this case and

---

[46] *Id.*
[47] ECF No. 75 at 18.
[48] *Graff v. Burnett*, 414 N.W.2d 271 (Neb. 1987).
[49] *Id.* at 275.
[50] ECF Nos. 71-7; 77-1 at 33.

10

his affidavit does not properly authenticate the documents.[51] Saticoy Bay relies on outdated law. The 2010 amendment to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirement" that evidence must be admissible in its present form in order to be considered on summary judgment.[52] The rule now mandates instead that the proponent of the evidence be able to proffer the evidence in an admissible form at trial.[53] Nationstar has demonstrated that these documents can be proffered under the business-records exception to the hearsay rule and that affiant Douglas Miles may be permitted to testify as the person most knowledgeable from Miles Bauer, formally disclosed in December 2105.[54] Accordingly, the court may rely on Nationstar's tender evidence in resolving these summary-judgment motions.

That evidence shows undisputedly that Miles Bauer validly tendered the full amount of the superpriority lien to the HOA. So, as the Nevada Supreme Court held in *Diamond Spur*, the foreclosure sale on the entire lien resulted in a void sale as to the superpriority portion, the "first deed of trust remained after foreclosure," and "the HOA could not convey full title to the property."[55] Nationstar is therefore entitled to summary judgment on the competing quiet-title claims and a declaration that Saticoy Bay purchased the 6974 Emerald Springs Lane property subject to the deed of trust.

**C.     Saticoy Bay's remaining arguments are foreclosed by *Diamond Spur*.**

Saticoy Bay offers several additional points to defeat Nationstar's tender argument. Nearly all of them were expressly rejected in *Diamond Spur*.

---

[51] ECF No. 75 at 18–21.
[52] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).
[53] *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.
[54] *See, e.g.,* ECF No. 77-1 at 38.
[55] *Diamond Spur*, 427 P.3d at 121.

### 1. *Equitable subrogation principles do not apply.*

Saticoy Bay contends that by paying the superpriority portion of the lien, the lender did not extinguish the lien; instead, it just became equitably subrogated to the rights of the HOA.[56] Saticoy Bay primarily relies on an unpublished 2016 ruling from the Nevada Supreme Court in *Telegraph Road Trust v. Bank of America*, affirming the district court's holding that Bank of America, by paying off a prior deed of trust but failing to record its own, was equitably subrogated to the rights of the prior lienholder.[57] An order of affirmance and not an opinion intended as precedent, the *Telegraph Road* case is thinly reasoned and offers no meaningful support for Saticoy Bay's position.

Even if I could liberally interpret *Telegraph Road* to generally support Saticoy Bay's equitable-subrogation theory, the specific rules from the Nevada Supreme Court's en banc decision in *Diamond Spur* supplant that authority. The *Diamond Spur* court specifically addressed the legal effect of tendering the superpriority portion of an HOA's lien and concluded that "[a] valid tender of payment operates to discharge" the lien,[58] "cure[s] the default[,] and prevent[s] foreclosure as to the superpriority portion of the HOA's lien by operation of law."[59] So, contrary to Saticoy Bay's argument, current Nevada law recognizes that tender does not "operate[] as an assignment" and does not cause the lender to "become[] subrogated to the rights of the Association."[60] "Tendering the superpriority portion of an HOA lien does not . . . assign . . . an interest in land. Rather, it *preserves* a preexisting interest," allowing the lender to

---

[56] ECF No. 75 at 2–7.

[57] *Telegraph Rd. Tr. v. Bank of Amer.*, 383 P.3d 754 (Nev. 2016, unpublished).

[58] *Diamond Spur*, 427 P.3d at 117.

[59] *Id.* at 120.

[60] ECF No. 75 at 5.

12

"maintain its senior interest as the first deed of trust holder," curing the default, and preventing foreclosure.[61] Because the Nevada Supreme Court's 2018 published en banc decision on this precise point controls here, I decline Saticoy Bay's invitation to adopt instead its ill-fitting *Telegraph Road*-based analysis.

### 2. *The tender need not be recorded.*

Saticoy Bay next contends that the tender was ineffective because it was not recorded.[62] It reasons that tender is a conveyance, Nevada's statutory scheme requires conveyances to be recorded, and unrecorded conveyances have no effect on a subsequent purchaser.[63] But the *Diamond Spur* court expressly rejected this argument at its very foundation. It held that tender is not a conveyance, so it does not require recording.[64] Saticoy Bay's argument thus fails as a matter of controlling Nevada law.

### 3. *BFP status is irrelevant with tender.*

Finally, Saticoy Bay argues that it is an innocent, third-party bona fide purchaser, and the rights of such innocents must prevail.[65] Third-party purchaser SFR Investment Pool, LLC made the same argument in *Diamond Spur*, and the Nevada Supreme Court rejected it, too. The Court held that "[a] party's status as a BFP is irrelevant when a defect in the foreclosure proceedings renders the sale void."[66] And that's what happens when an HOA forecloses on the entire lien after valid tender of the superpriority portion—because the lien is no longer in default, the trustee

---

[61] *Diamond Spur*, 427 P.3d at 119–20.
[62] ECF No. 75 at 5.
[63] *Id.*
[64] *Diamond Spur*, 427 P.3d at 119–20.
[65] ECF No. 75 at 7–11.
[66] *Diamond Spur*, 427 P.3d at 121.

13

lacks the power to foreclose; so, "foreclosure on the entire lien result[s] in a void sale as to the superpriority portion," "the HOA [can] not convey full title to the property," and the "first deed of trust remain[s] after the foreclosure."[67] Thus, BFP or "innocent" status does not change the legal reality that Saticoy Bay took this property subject to the first trust deed.

**Conclusion**

Nationstar has established that its predecessor-in-interest validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the superpriority portion, and causing the deed of trust to survive the foreclosure sale. I thus grant Nationstar's motion on this tender issue, enter summary judgment in Nationstar's favor and declare that Saticoy Bay took the property subject to Nationstar's deed of trust, deny Saticoy Bay's countermotion for summary judgment as moot, and do not reach the parties' remaining arguments.

With good cause appearing and no reason to delay, IT IS THEREFORE ORDERED that Nationstar's motion for summary judgment **[ECF No. 71] is GRANTED** in part:

- Summary judgment is granted in favor of Nationstar Mortgage, LLC and against Saticoy Bay, LLC, Series 6974 Emerald Springs on the equitable quiet-title claims based on valid tender;
- Nationstar's claims against The Springs at Spanish Trail Association are DISMISSED as moot because these claims are conditioned upon the court finding that the foreclosure sale extinguished the deed of trust;
- Nationstar's fourth cause of action for injunctive relief is DISMISSED without prejudice because injunctive relief is a remedy, not an independent cause of action;

---

[67] *Id*.

And because I am granting summary judgment in favor of Nationstar, IT IS FURTHER ORDERED that Saticoy Bay's motion for summary judgment **[ECF No. 72] is DENIED** as moot.

The Clerk of Court is directed to **ENTER JUDGMENT in favor of Nationstar Mortgage, LLC and against Saticoy Bay, LLC, Series 6974 Emerald Springs, DECLARING that Saticoy Bay purchased the property at 6974 Emerald Springs Lane subject to the deed of trust dated March 21, 2005, and CLOSE THIS CASE.**

Dated: May 24, 2019

_____
U.S. District Judge Jennifer A. Dorsey